<hr/>

[Sac. No. 422.   Department Two.—December 9, 1898.]

## G. W. McNEAR, Appellant, v. A. BOURN and D. N. HER-SHEY, Respondents.

FORGED WAREHOUSE RECEIPT—AGENCY—NOTICE TO PURCHASER.—The purchaser of a forged warehouse receipt, which was signed in blank by one who had ceased to be the agent in charge of the warehouse, and which was fraudulently obtained and filled in with a false statement of a large deposit of grain in the warehouse, by the person procuring the blank receipt, who sold the same to the purchaser, through an agent, who had notice that the receipt was signed after the agent signing it had ended his employment in the warehouse, must suffer the loss, and cannot throw it upon the warehouse, under the maxim embodied in section 3543 of the Civil Code.

ID.—SUPPORT OF FINDING—CONFLICTING EVIDENCE.—Where there is some evidence to sustain a finding that the agent of the purchaser had notice of the want of authority to sign the warehouse receipt, the finding will not be disturbed upon appeal, though there is conflicting evidence to the contrary, in view of which the finding might well have been to the contrary.

ID.—EVIDENCE—NOTICE—CESSATION OF AGENT'S EMPLOYMENT—ABSENCE OF WHEAT.—In an action by the purchaser of the spurious warehouse receipt against the owners of the warehouse, their former agent having testified that prior to the purchase of the receipt, he gave notice to the agent of the plaintiff of the fact and date of his discharge, it was competent for defendants to show by him when his employment ceased, and that, on that date, no such lot of grain as that described in the receipt was in the warehouse, and that he subsequently told plaintiff's agent that there was something wrong about that receipt. It was also competent to show by him the circumstances under which he signed the receipt in blank, and that the body of it was filled in by another person.

APPEAL from a judgment of the Superior Court of Yolo County, and from an order denying a new trial. W. H. Grant, trial Judge. E. E. Gaddis, Judge denying new trial.

The facts are stated in the opinion.

Hurst & Hurst, and Fred W. McNear, for Appellant.

F. E. Baker, and R. Clark, for Respondent.

CHIPMAN, C.—Defendants owned a warehouse at Ronda, near Woodland, and received grain on storage, issuing warehouse receipts therefor. Plaintiff purchased a receipt calling for six hundred and forty sacks of wheat, which defendants claimed was forged and refused to deliver the wheat described in it upon demand of plaintiff. This action is to recover the sum of seven hundred and sixty-five dollars and five cents, paid by plaintiff as the value of this wheat. The trial was by the court and defendants had judgment, from which and from an order denying motion for new trial this appeal is prosecuted.

The court found that defendants were engaged in receiving grain on storage in the year 1895 up to August 6 of that year; Frank Gasteiger was defendants' agent in charge of their warehouse, and was authorized to issue warehouse receipts in the name of defendants for storage of grain; Robert Nethercott was plaintiff's agent, and authorized to buy wheat for plaintiff; Gasteiger ceased to receive grain in storage on August 6th, and defendants settled with and discharged him, after which time he had no authority to act for defendants in any capacity. On August 14th Gasteiger was working at baling hay eight miles from Ronda for other employers; on that day one H. Burk took to Gasteiger a warehouse receipt theretofore made out by Gasteiger to one Emma C. Laugenour, which Burk represented was incorrect, and requested Gasteiger to sign a warehouse receipt in blank in the usual way and he, Burk, would take the Laugenour receipt and the blank receipt thus signed to one Watkins, the agent of Mrs. Laugenour, and have him fill the blanks in the receipt; Gasteiger complied with Burk's request and gave him the blank receipt signed in the name of defendants by Gasteiger; Watkins was not in any way the agent of defendants; Burk pre-

sented the receipt to Nethercott filled out as of date August 13th and so as to show that he, Burk, had six hundred and forty sacks of wheat on storage in defendants' warehouse, and Nethercott purchased the receipt and paid Burk the sum stated; subsequently plaintiff presented the receipt to defendants and demanded the wheat, which was refused. Finding 10 is that Gasteiger was discharged from defendants' employment on August 6th, and thereafter had no authority to act as their agent; and that on August 7th, the day following his discharge, Gasteiger saw and had a conversation with Nethercott in Woodland, "during which conversation he informed said Nethercott that he was no longer in defendant's employ; that he was paid up and discharged the day previous, and was then looking for a job. He also informed the said Nethercott that defendants had taken in all the wheat intended for storage during said year in said warehouse and had no further use for an agent or weigher at their warehouse." Finding 11 is to the effect that on August 19th Gasteiger again met Nethercott at Woodland and Nethercott told Gasteiger he had bought Burk's wheat in defendant's warehouse, whereupon Gasteiger told Nethercott there was no such wheat there, and that Burk had left no wheat there. Defendants knew nothing of the existence of this receipt until after Nethercott had bought it.

The plaintiff presented the following as the pivotal question in the case, "Did the defendants, by their want of ordinary care, cause or allow appellant's agent, Nethercott, to believe that Gasteiger was their, defendants', agent on August 13, 1895, the date of the warehouse receipt?"

It is contended by plaintiff that it was the duty of defendants to give notice of their agent's discharge and the revocation of his authority. The provisions of the Civil Code and the general doctrine governing agencies, under circumstances such as appear here, are quite fully given by counsel for plaintiff. Section 3543 of the Civil Code, is also cited to show that this is a case where one of two innocent persons must suffer by the act of a third, and that the loss must fall on the defendant because it happened through their negligence.

If finding 10 is supported by the evidence it becomes unnecessary to determine what the rule is as to giving notice where a

principal discharges his agent, for it is found that plaintiff had notice.

The evidence of Gasteiger tended to show that he met Nethercott in Woodland on August 7th, and said enough to him to leave the plain inference that he was no longer in defendants' employment. He met Nethercott again after the latter had purchased the receipt. Nethercott told Gasteiger of his purchase from Burk, whereupon Gasteiger told him that no such person had any wheat in the warehouse, and showed him a list of all the sacks in the warehouse. A witness was called who was, it is claimed, present at this meeting and testified that he and Gasteiger were talking together when Nethercott came up and spoke to them and said: " 'What are you doing here?' And Gasteiger said, 'Didn't I tell you before that I was not working at the warehouse any more?' Mr. Nethercott said, 'I believe you did.' " Some discussion is indulged as to whether Nethercott referred to the conversation of August 7th, between him and Gasteiger, or to another conversation he had with Gasteiger after Nethercott bought the receipt. It does not clearly appear to which conversation Nethercott referred. It is not material, however, because the court could accept Gasteiger's evidence without corroboration. Nethercott denies having seen Gasteiger on the seventh, or at any time after the sixth and before he bought the receipt from Burk. In other respects he flatly contradicted Gasteiger and testified that he had no notice that Gasteiger was discharged at the time he bought the receipt.

After a careful examination of the transcript we are unable to say that there was not sufficient evidence to support the findings. It was the province of the trial judge to pass upon the credibility of the witnesses and to accept or reject such portion of the evidence as to him seemed worthy or unworthy of credence. An examination of the testimony of the witnesses will show that the court might well have reached an opposite conclusion from the one arrived at, but we cannot say that it was bound to do so, or that the findings are unsupported by the evidence. Plaintiff was grossly imposed upon by the criminal act of Burk and the more than careless conduct of Gasteiger, but the learned judge who tried the case found that plaintiff's agent had notice of Gasteiger's discharge seven days before the date of the re-

ceipt. It may be that when the receipt of a subsequent date was presented to Nethercott for sale on the thirteenth or fourteenth of August, he believed that Gasteiger had resumed work for defendants; but as defendants in nowise contributed to this belief they should not suffer because of Nethercott's mistake.

It is possible, too, that Nethercott was right and Gasteiger wrong as to the date when the latter first informed the former of his discharge by defendants, but the trial court accepted Gasteiger's version of the circumstance and rejected that of Nethercott. The rule, well established, forbids us from interfering with the prerogative of the court in passing upon the credibility of these witnesses.

2. Plaintiff assigns certain errors of law occurring at the trial.

(a.) It is claimed that error was committed in allowing defendants to show by Gasteiger that no lot of six hundred and forty sacks of wheat was in the warehouse when he was discharged. As Gasteiger had testified to the circumstances under which he signed the Burk receipt, and had also testified to having given Nethercott notice of his discharge, we think it was not prejudicial error to show by this witness that there was no such lot of wheat in the warehouse on the sixth, when Gasteiger quit work there.

(b.) We think it was competent for defendants to show by Gasteiger that his employment ceased on August 6th, as there was evidence tending to show notice of that fact to plaintiff.

(c.) We can discover no prejudice to plaintiff in the evidence of Gasteiger as to what was said between him and Nethercott on the nineteenth of August, conceding it to be immaterial. It amounted simply to his telling Nethercott there was something wrong about the Burk receipt.

(d.) We think it was competent for defendants to show the circumstances under which Gasteiger signed the receipt and that the body of it was filled in by some other person, inasmuch as there was evidence that Nethercott had notice that Gasteiger quit work on August 6th.

The judgment and order should be affirmed.

Belcher, C., and Haynes, C., concurred.

CXXII.   Cal.—40

For the reasons given in the foregoing opinion the judgment and order are affirmed.

Temple, J., McFarland, J., Henshaw, J.